IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | 1:15CR94-1 |
| v. | : | 1:15CR295-1 |
| | : | |
| BRIAN DENNIS KUHLES | : | |

**MEMORANDUM OPINION AND ORDER**

Defendant Brian Dennis Kuhles ("Defendant") is a federal inmate serving a 221-month sentence. Defendant has filed a Motion to Reduce Sentence re Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A).[1] (Case No. 1:15CR94-1, Doc. 66; Case No. 1:15CR295-1, Doc. 14.) The Government has responded and does not oppose the motion but leaves it to the court's discretion as to whether compassionate release is warranted. (Case No. 1:15CR94-1, Doc. 75; Case No. 1:15CR295-1, Doc. 20.) For the reasons stated below, Defendant's motion will be denied.

## I. BACKGROUND

Defendant committed a series of armed robberies in October and November 2014 and was indicted in two cases related to that conduct. (Doc. 55, ¶¶ 1-4.) On August 19, 2015, Defendant pled

[1] Defendant has filed the identical motion in both cases. Unless specified, citations in the Order refer to Case No. 1:15CR94-1 and use the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

guilty pursuant to plea agreements. In Case No. 1:15CR94-1, Defendant pled guilty to one count of interference with commerce by robbery in violation of 18 U.S.C. § 1951(a); and two counts of armed bank robbery in violation of 18 U.S.C. § 2113(d) and 2. (Doc. 59; Minute Entry 8/19/15.) In Case No. 1:15CR295-1, Defendant pled guilty to one count of bank robbery in violation of 18 U.S.C. § 2113(a); one count of armed bank robbery in violation of 18 U.S.C. § 2113(d), and one count of carry and use, by brandishing, a firearm in relation to a crime of violence in violation of 18 U.S.C. 924(c)(1).[2] (Id.) Defendant was sentenced to a combined term of 221-months of imprisonment. (Doc. 59 at 2.)

On March 23, 2026, Defendant filed his motion for compassionate release. (Doc. 66.) He subsequently filed multiple supplements to the motion. (Docs. 68, 69, 70, 72, and 77.) Defendant seeks compassionate release arguing that he is not receiving the ongoing treatment he needs for his traumatic brain injury and that his ability to care for himself in Bureau of Prison ("BOP") custody is substantially diminished because of impairments from the traumatic brain injury. (Docs. 66, 70.)

---

[2] Defendant was indicted for these charges in the Western District of North Carolina, (Case No. 1:15CR295-1, Doc. 1-1) but consented to the case being transferred to this district for his plea and sentencing. (Case No. 1:15CR295-1, Doc. 1.)

Defendant also seeks compassionate release so that he can act as a caregiver for his mother. (Docs. 69, 70.) Defendant is 59 years old, presently incarcerated at Leavenworth FCI, and has a projected release date of July 29, 2031.[3]

## II. **ANALYSIS**

A sentence imposed under the law is intended to be final, United States v. Goodwyn, 596 F.3d 233, 235 (4th Cir. 2010), and "generally cannot be modified." United States v. Holley, 179 F.4th 985, 989 (4th Cir. July 1, 2026). However, section 18 U.S.C. § 3582(c)(1)(A), often known as the compassionate release provision, allows a court to reduce a sentence when "extraordinary and compelling" reasons warrant such a reduction, the reduction is consistent with the applicable policy statements issued by the Sentencing Commission, and a consideration of the relevant § 3553(a) sentencing factors support a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A)(i); see also Rutherford v. United States, 608 U.S. -, 146 S. Ct. 1320, 1327 (2026). The Sentencing Commission policy statements essentially restate the requirements of § 3582(c)(1)(A) and identify categories of circumstances that constitute extraordinary and compelling reasons to grant compassionate

[3] BOP Inmate Locator, https://www.bop.gov/inmateloc/(last visited Aug. 24, 2026).

release. See U.S.S.G. § 1B1.13(b), invalidated in part by Rutherford, 146 S. Ct. at 1334-35.[4] Relevant here, the policy statements include certain medical and family circumstances of the defendant as extraordinary and compelling reasons that may support a reduction of sentence. See U.S.S.G. § 1B1.13(b)(1) & (3).

Section 3582 requires a defendant to exhaust administrative remedies before seeking relief in court. See 18 U.S.C. § 3582(c)(1)(A). Exhaustion is not jurisdictional and waived unless invoked by the Government. See United States v. Muhammad, 16 F.4th 126, 129-30 (4th Cir. 2021). The Government acknowledges that Defendant has satisfied the exhaustion requirement. (Doc. 75 at 4.) Thus, the court will proceed to the merits of Defendant's motion.

**A. Extraordinary and Compelling Reasons**

1. Medical Circumstances

Defendant first argues the court should grant him compassionate release because he suffered a traumatic brain injury after a brutal attack by other inmates in 2023, that

[4] In Rutherford, the Supreme Court held that a nonretroactive change to the law such as the elimination of sentence stacking under 18 U.S.C. 924(c) cannot be an extraordinary and compelling reasons for compassionate release and invalidated § 1B1.13(b)(6) to the extent it provides otherwise. Id. at 1335.

"left [him] with long-term brain damage, loss of mobility, and cognitive impairments that are not being treated at FCI Leavenworth." (Doc. 68 at 1; Doc. 70 at 6.) Defendant asserts that he has impaired balance, cannot stand for more than 30 minutes, requires a four-wheeled walker to move about, suffers from chronic and debilitating headaches, and is in a state of deteriorating physical condition, including significant weight loss. (Doc. 70 at 3,6.) Defendant argues that his condition requires "long-term and specialized" care that is not being provided and without which he is at "irreparable risk of cruel deterioration in mental health." (Id.) He also claims that his brain injury caused "serious functional and cognitive impairment that substantially diminishes the ability for him to self-care within FCI Leavenworth." (Id.)

The Sentencing Commission policy statements provide that medical circumstances may amount to an extraordinary and compelling reason if:

> (B) The defendant is—
>
> (i) suffering from a serious physical or medical condition,
>
> (ii) suffering from a serious functional or cognitive impairment, or
>
> (iii) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the

> environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

U.S.S.G. § 1B1.13(b)(1) (B-C).[5]

The information before the court demonstrates that Defendant suffered grave injuries after he was assaulted by multiple inmates on January 1, 2023, while housed at USP McCreary. (Doc.76 at 36.) Defendant lost consciousness, sustained multiple facial fractures which required surgery, and suffered brain trauma which caused permanent deficits with his speech, memory, and balance.[6] (Id. at 22, 27, 36.) Initially

---

[5] The policy statements also provide an extraordinary and compelling reason for relief may exist in the case of a terminal illness. See U.S.S.G. § 1B1.13(b)(1)(A). This section is not applicable to Defendant's motion.

[6] In his motion, Defendant states that he was in a "[b]rain [i]nduced [c]oma for 5 months" but that is not correct. (Doc. 66 at 1.) The Government indicates Defendant regained consciousness "shortly after surgery" which was on January 3rd,(Doc. 75 at 9), and the medical records indicate Defendant was able to say his name and follow commands during an exam on January 5, 2023. (Doc. 76 at 30.)

Defendant was disoriented, could recall little beyond his own name, and required a feeding tube. (Id. at 10, 23, 32-33.) He was hospitalized for more than a month.[7] When Defendant was released from the hospital he was transferred to Springfield Medical Prison, but within days of arriving, on February 17, 2023, he tripped and hit his head on a door, again losing consciousness. (Id. at 19.) Defendant did not suffer any additional brain injuries from the fall. (Id.)

About 20 months later, on November 1, 2024, while housed at USP Beaumont, Defendant suffered more head injuries after an altercation with a bunkmate. (Id. at 105.) Defendant was initially evaluated by BOP health services and treated for facial lacerations and subsequently diagnosed with a broken jaw when seen at the hospital a week later. (Id. at 85, 102-105.) The provider indicated an urgent need for a consult with an oral surgeon. (Id. at 79, 83.) Defendant had not received the consult when his case was reviewed on December 17, 2024. (Id. at 79,

[7] Records indicate Defendant was medically ready for discharge from the hospital on February 6, 2023, but they were waiting for bed availability at the medical prison. (Doc. 71 at 29.)

83.) However, when an appointment was scheduled in early January 2025, Defendant refused the appointment. (Id. at 98.)

The Government thoroughly recounts Defendant's history of assaults and injuries and defers to the court as to whether compassionate release is warranted under these circumstances. (Doc. 75 at 17-18.) However, the Government acknowledges that "the evidence as a whole appears to reflect the BOP has provided Kuhles with adequate medical care for his injuries and conditions . . ." and that it does not appear that to Defendant was "denied timely and adequately medical care . . . at least

with respect to the 2023 assault."[8] (Id. at 14, 16.) While recognizing that Defendant's brain trauma left him with impairments, the Government also states that Defendant "appear[s] to be able to carry out his activities of daily living with the help of assistive devices." (Id. at 17.)

Defendant undeniably suffered severe injuries from the January 2023 assault and has what appear to be permanent physical and cognitive impairments. However, Defendant has

---

[8] The Government rightfully expresses concern about Defendant's lengthy wait for an appointment to replace his lower denture plates that were apparently broken in the November 2024 altercation. However, Defendant does not raise anything regarding this delay or his dentures in his motion, nor has he shown any negative impacts to his health tied to this issue. Although Defendant generally refers to unintended weight loss in his motion, he has returned to his normal weight. (Doc. 76-2 at 6). In the absence of any evidence that the broken dentures are impacting Defendant's health, the extended wait time would not establish an extraordinary and compelling reason for compassionate release. See, e.g., United States v. Nichols, No. 3:00CR95, 2026 WL 1269887, at * 4 (M.D. Tenn. May 8, 2026) (defendant's claims that he was not receiving adequate treatment including dentures not a basis for compassionate release where no indication it placed him at risk of serious deterioration in health or death); United States v. Kayian, No. 1:16CR41, 2024 WL 1478655, at * 1 (years long delay in receiving dentures did not amount to an extraordinary and compelling reason where defendant able to eat range of foods and had regained weight lost due to dental issues); see also United States v. Leinheiser, No. 22-2256, 2023 WL 4341876, at *3 (3d Cir. July 5, 2023) (affirming district court's denial of the motion for compassionate release based in part on denial of dentures for years).

failed to demonstrate an extraordinary and compelling reason for release based on these conditions. Defendant has been given appropriate treatment to address both his mental and physical injuries since the time of the assault. Defendant argues that he is not receiving adequate care for his traumatic brain injury, (Doc. 70 at 6), but he does not specify what type of treatment he believes he needs that is not being provided. Nothing before the court indicates that Defendant's care is deficient.

After his assault, Defendant received both speech and physical therapy for his injuries. It appears he has not received ongoing therapy because additional treatment is not expected to produce further improvements. Defendant completed 20 sessions of speech therapy between May 2, 2023, and September 14, 2023, and the final assessment by the therapist indicates that Defendant was being discharged. (Doc. 76 at 13-18, 60-61.) Defendant asked for additional sessions, but the therapist determined the 20 sessions "were appropriate" and reminded Defendant that "after traumatic brain injury, nobody ever functions at 100%." (Id. at 60) Defendant also completed physical therapy three times a week for three months to work on "balance, strength, and endurance." (Id. at 6, 8.) The BOP has addressed Defendant's ongoing balance and mobility issues by prescribing various medical equipment, ultimately issuing a

wheeled walker. (Doc. 76-2 at 17, 20, 28.) Defendant is correct that when transferred to his current facility he was not initially provided with the right type of walker, but the situation has been rectified.[9] (Id. at 6, 28, 44.)

The medical records document Defendant's ongoing struggle with chronic headaches but also show that he has received consistent and suitable treatment. Medical records from March 2025 indicate that Defendant "state[d] ibuprofen and Tylenol work well for his headaches." (Id. at 94.) Records from April 2026 show Defendant was also given a prescription medicine, Nortriptyline to help treat his headaches. (See, e.g., Doc. 76-2 at 7-8. ) However, records from an appointment at health services on May 24, 2026, show that the Nortriptyline was discontinued because of Defendant's noncompliance. (Id. at 1.)

In October 2025, Defendant weighed only 162 pounds, and the medical records note concern with his unintentional weight loss. (Id. at 6.) However, at an April 2026 health services encounter Defendant weighed 170 pounds, and the provider noted that "[p]atient reports this is his normal weight and he is comfortable with this weight. No further concerns at this time."

---

[9] Medical records from April 3, 2026, also indicate that Defendant "[h]ad used a walker but wanted to trial [sic] walking without the walker. A walker refusal had been signed. He reports multiple falls without injury since that time. A wheeled walker will be provided to him today." (Doc. 76-2 at 6.)

(Id.) Consequently, the medical records demonstrate that the health concerns which Defendant identifies in his motion, his difficulty ambulating, chronic headaches, and weight loss, have all been adequately addressed by BOP health services.[10]

Moreover, while Defendant suffers from long-term physical and cognitive issues, he has not shown that these conditions substantially diminish his ability to provide self-care in BOP custody. See U.S.S.G. § 1B1.13(b)(C). As early as March 2023, Defendant was "able to dress himself, feed himself, bathe himself and perform toileting and hygiene independently." (Doc. 76 at 7.) There is nothing in the record to suggest he has regressed with any of these abilities.

Insofar as Defendant says that his headaches "prevent[] him from walking to the dining hall for lunch and other meals" (Doc. 70 at 3) the record contradicts his claim. Recent BOP health records indicate that multiple personnel reported Defendant had been seen "ambulating without difficulty both inside and outside unit, to commissary, yard, second floor . . . ." (Doc. 76-2 at 4.) The BOP health provider described Defendant as "healthy

[10] There was a two-month delay for an oral surgery consult after Defendant's jaw was broken in November 2024. However, Defendant does not complain about this delay and cannot show it is a basis for compassionate release when he refused the oral surgery appointment that was ultimately scheduled in January 2025. (Doc. 76 at 98.)

appearing" and found him to be "alert and oriented x3" with "normal memory, mood, and affect." (Id.) Defendant denied "headache, neck pain, numbness or tingling of the extremities, or weakness." (Id.) Further, as discussed above, Defendant's weight has returned to his normal range which suggest he is consuming adequate calories. (Id. at 6.)

While the court is sympathetic to the fact that Defendant suffered a traumatic brain injury and faces permanent health challenges as a result, this alone cannot establish grounds for compassionate release. See, e.g., United States v. Savage, Crim. Act. No. 1:01CR64, 2024 WL 1913166, at *3 (N.D. W. Va. Apr. 30, 2024) (finding medical conditions including brain injury and mobility issues failed to establish an extraordinary and compelling reason for relief where conditions adequately treated and inmate capable of self-care). Defendant has not shown that his ability to provide self-care is substantially diminished or that he is not receiving medical care that he requires. Accordingly, Defendant fails to demonstrate an extraordinary and compelling reason for compassionate release based on his medical circumstances.

2. Family Circumstances

Defendant also argues that he should be granted compassionate release because he is needed as a caregiver for

his mother who is in her late seventies and "incapacitated to the point that she cannot care for herself." (Doc. 70 at 1.) The Sentencing Commission policy statements recognize that the incapacitation of a parent may be an extraordinary and compelling reason for a reduction "when the defendant would be the only available caregiver for the parent." U.S.S.G. § 1B1.13(b)(3)(C).

Defendant states that his mother suffers from spinal stenosis, Chronic Obstructive Pulmonary Disease ("COPD"), and has been diagnosed with early dementia. (Doc. 70 at 5.) He indicates his mother's dementia impacts her ability to properly take her prescription medicine, pay bills, and perform daily tasks. (Id.) He argues that "[h]er consistently abnormal respiratory functioning, combined with her other medical issues . . . impairs her to the point that she requires a full-time, in-home caregiver." (Doc. 70 at 5.) He says that his sister does not have contact with their mother and lives in another state, and he is the only available caregiver. (Id.)

Defendant fails to establish an extraordinary and compelling reason for compassionate release based on his family circumstances. A defendant bears the burden of establishing the extraordinary and compelling reasons that justify release. See United States v. Newton, 996 F.3d 485, 488 (7th Cir. 2021); see

also United States v. Hargrove, 30 F.4th 189, 195 (4th Cir. 2022). Defendant has not presented any evidence to support his claim, but rests on his bare assertions about his mother's medical conditions and her level of impairment. Likewise, Defendant fails to adequately demonstrate that he is the only available caregiver. Defendant contends that his mother requires total care and he is the only person available, but he does not explain who has been caring for his mother to this point or why they cannot continue to do so. Consequently, Defendant, who offers only his conclusory assertions with no details or documents in support, fails to show an extraordinary and compelling reason for a reduction of sentence based on his family circumstances.[11]

**B. 18 U.S.C. § 3553(a) Factors**

Having determined Defendant fails to show an extraordinary and compelling reason to modify his sentence, the court is not required to consider if the 18 U.S.C. § 3553(a) factors weigh in favor of a reduction. The court finds, in any case, such an

[11] The court also notes the inconsistency between the two reasons Defendant puts forward as grounds for compassionate release. Defendant argues that because of the ongoing effects from his traumatic brain injury he is in a state of deteriorating physical condition that substantially diminishes his ability to provide self-care. (Doc. 70 at 6.) At the same time, he argues he should be released to act as a caregiver for his mother so he can take care of her, take her to doctor appointments, and shop for food. (Doc. 69 at 2.)

analysis does not support granting Defendant relief. Section 18 U.S.C. § 3553(a) requires a sentence that is "sufficient, but not greater than necessary" to satisfy the goals of sentencing. 18 U.S.C. § 3553(a). In making the determination, the court weighs the nature of the offense, a defendant's personal history, the sentence relative to the seriousness of the offense, the need for a sentence to find just punishment for the crime, the need to protect the public and deter crime, the need to provide rehabilitative circumstances, and the need to avoid sentencing disparity. 18 U.S.C. § 3553(a). The burden of proof rests with the defendant to show "why the § 3553(a) factors justify a modified sentence." United States v. Centeno-Morales, 90 F.4th 274, 279 (4th Cir. 2024).

The records before the court show that Defendant has taken some encouraging steps towards rehabilitation. He has completed the non-residential drug and alcohol program, worked at prison jobs, and taken BOP courses. (Doc. 75-2 at 1; Doc. 75-4 at 1; Doc. 76-1 at 1.) The court also acknowledges that Defendant's period of incarceration has involved additional hardship because of the 2023 assault and resulting physical and cognitive impairments. Nonetheless, the Court does not find that these

considerations shift the balance of the § 3553(a) factors in favor of a reduction.

Defendant writes that he is a "decent guy that just messed up in 2014 and broke the law." (Doc. 69 at 2.) This statement, which implies that Defendant made some bad decisions during a brief period, grossly misrepresents Defendant's criminal history. Defendant's crimes and convictions date back to his late teens and continued through the commission of the present offenses in his late forties. Defendant has multiple prior convictions for felony robbery and felony grand theft, as well as convictions for other offenses including felony burglary and felony fugitive from justice. Defendant committed the instant crimes within 5 months of being released from a 20-year sentence of imprisonment for prior felony robbery convictions. This history suggests that periods of incarceration, even lengthy, have done little to prevent additional criminal conduct and weighs decidedly against release. Defendant is 59 years old, an age at which the risk of recidivism generally declines, see United States v. Howard, 773 F.3d 519, 553 (4th Cir. 2014), but the inference is undermined here since Defendant was already in his late forties when he committed the offenses.

The circumstances of the crimes likewise weigh against a reduction of sentence. In making his motion, Defendant reasons

that nobody was harmed during his robberies, (Doc. 66 at 1), but Defendant's crimes were serious. Defendant committed armed bank robberies using a firearm to threaten and intimidate his victims. (Doc. 55, ¶¶ 6-10.) His robberies spanned several weeks and there is no indication his crimes would have stopped if he had not been apprehended.

The court recognizes that Defendant now has physical limitations due to the 2023 attack. However, Defendant's motion indicates that he believes he is physically capable of caring for his mother including taking her to appointments and shopping for food. (Doc. 69 at 2; Doc. 70 at 5.) Therefore, the court cannot conclude that Defendant's physical limitations are so substantial as to render him incapable of committing a crime. Defendant states that his "breaking the law days are totally 100% over with in the whole world." (Doc. 77 at 2.) The court sincerely hopes that Defendant, who has taken some positive steps to rehabilitate while incarcerated, is correct. However, Defendant's current efforts to change do not relieve him of responsibility for the crimes he committed or from serving his lawful sentence.

Accordingly, the court concludes that Defendant's sentence is "sufficient, but not greater than necessary" to serve the goals of sentencing. Any lesser sentence would not promote

respect for the law, protect the public, or provide adequate deterrence. See 18 U.S.C. § 3553(a).

## III. CONCLUSION

For the reasons stated above, the court finds that Defendant has failed to show an extraordinary and compelling reason for a reduction of sentence and the § 3553(a) factors weigh against a reduction of sentence.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Reduce Sentence re Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A),(Case No. 1:15CR94-1, Doc. 66; Case No. 1:15CR295-1, Doc. 14), is **DENIED.**

This the 26th day of August, 2026.

William L. Osteen, Jr.
United States District Judge